## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

JOHN MELLEADY, et al.,

        Plaintiffs,

    v.

ALLISON BLAKE, et al.,

        Defendants.

Civil No. 11-1807 (NLH/KMW)

**OPINION**

**APPEARANCES:**

John Melleady
Virginia Keefer
101 Idle Lake Road
Franklinville, New Jersey 08322
    *Pro Se*

Karen Lee Jordan, Esquire
Office of New Jersey Attorney General
Department of Law and Public Safety, Division of Law
Richard J. Hughes Justice Complex
25 Market Street
P.O. Box 116
Trenton, New Jersey 08625
    *Attorney for Defendants Allison Blake, Christine Norbut-Moses, Kathryn J. Way, Anne Milgram, Jamie Millard-Tindall, Gregory Rappaport, Larry Moon, Marcella Haddon, Brian Jakubowski, Taiwo Williams, Tiffany Jubb, Regina Floyd-Jones, Terry McNellis, Deserre Whiteside, Gina Tracy, Janet Boyle, Deborah Parker, Crystal Bates, Janet Foley, and San Payne*

Brian C. Darreff, Esquire
Earp Cohn P.C.
20 Brace Road
Fourth Floor
Cherry Hill, New Jersey 08034
    *Attorney for Defendants Frank Borelli, Helen Divens, Joseph Sottosanti, and Delsea Regional School District*

Steven D. Wallach, Esquire
5 Mapleton Road
First Floor
Princeton, New Jersey 08540
    *Attorney for Defendant Brent Brendle*

Kelly A. Samuels, Esquire
Office of New Jersey Attorney General
Department of Law and Public Safety, Division of Law
Richard J. Hughes Justice Complex
25 Market Street
P.O. Box 112
Trenton, New Jersey 08625
    *Attorney for Defendant Judge Mary K. White*

Rahat N. Babar, Esquire
Office of New Jersey Attorney General
Department of Law and Public Safety, Division of Law
Richard J. Hughes Justice Complex
25 Market Street
P.O. Box 116
Trenton, New Jersey 08625
    *Attorney for Defendant David Garnes, Esquire*

**HILLMAN, District Judge**

    This matter comes before the Court by way of five separate
motions [Doc. Nos. 11, 12, 15, 26, 32] to dismiss Plaintiffs'
complaint filed by various Defendants in this action.  Also
before the Court is Plaintiffs' motion [Doc. No. 18] for the
Court to address policies and practices of the New Jersey
Division of Youth and Family Services.  The Court has considered
the parties' motions and the oppositions thereto, and decides
this matter pursuant to Federal Rule of Civil Procedure 78.

    For the reasons expressed below, Defendants' motions are
granted, and Plaintiffs' motion is dismissed as moot.

2

## I.   <u>JURISDICTION</u>

Plaintiffs, John Melleady and Virginia Keefer, bring this civil rights complaint against multiple defendants pursuant to 42 U.S.C. § 1983.  The Court has jurisdiction over Plaintiffs' federal claims under 28 U.S.C. § 1331, and may exercise supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367.

## II.   <u>BACKGROUND</u>

### A. Removal of Children from Plaintiffs' Home

Plaintiffs, John Melleady and Virginia Keefer, a married couple, filed the complaint in this action <u>pro</u> <u>se</u> on March 30, 2011 against thirty-three defendants.  (<u>See generally</u> Pls.' Compl. [Doc. No. 1].)  According to the complaint, Plaintiffs commenced this action "because children were illegally, forcibly – kidnapped [sic] [from their home] on known erroneous, fabricated, and unsubstantiated allegations."  (Pls.' Compl. ¶ 15.)  As demonstrated by several exhibits attached to the complaint, Plaintiffs' claims arise from the removal of both their adopted son, ("S.K"), and their foster son, ("D.L."), from their home in November of 2008 and subsequent proceedings in the Superior Court of New Jersey, Chancery Division - Family Part for Gloucester County, ("Family Court").

The Division of Youth and Family Services ("DYFS"[1]), a branch of New Jersey's Department of Children and Families, has been involved with Plaintiffs' family since approximately 2004 when S.K. began living with Plaintiffs. (DYFS Contact Sheet, Ex. 4 to Pls.' Compl. [Doc. No. 1-2] 1.)  Plaintiffs formally adopted S.K. in 2007, but as noted by DYFS, "[s]ince the adoption with the [Plaintiffs], [S.K.'s] adoptive home has not been ideal" and there were several referrals to DYFS regarding S.K. not "getting along" with his adoptive mother, Plaintiff Keefer.  (Id.)  In August of 2008, after a referral was made, DYFS substantiated a claim for child neglect against Plaintiffs for locking S.K., then fifteen (15) years old, out of the family home.  (Id.)  After this claim was substantiated, DYFS placed S.K. in a shelter for a two-week "cooling off period," and S.K. was later returned to Plaintiffs' home.  (Id. at 2.)

Several months later, in October of 2008, S.K. informed a DYFS employee that Plaintiff Keefer had become "increasingly controlling and verbally abusive" to S.K., and S.K. reported that he did not feel he could remain in Plaintiffs' home as a result. (Id.)  On November 7, 2008, while waiting for a court date with regard to S.K.'s October 2008 allegations, the DYFS employee working on S.K.'s case received a call from another DYFS employee

---

1. Although multiple DYFS employees are named as Defendants in this action, Plaintiffs did not name DYFS as a defendant.

who served as the permanency supervisor for Plaintiffs' foster child, D.L.  (<u>Id.</u>)  D.L.'s permanency supervisor noted that DYFS was recommending that D.L. be placed with a new foster family in light of the difficulties Plaintiff Keefer was having with her adopted son, S.K. -- specifically, the substantiated claim for child neglect when S.K. was locked out of the family home.  (<u>Id.</u>; <u>see also</u> Verified Am. Compl. for Custody, Care and Supervision, Ex. 39 to Pls.' Compl. [Doc. No. 1-6] ¶¶ 9a-9c.)  D.L.'s permanency supervisor further indicated that DYFS planned to go to Plaintiffs' home that same evening to remove D.L. from Plaintiffs' care and place D.L. with a new foster family.  (DYFS Contact Sheet, Ex. 4 to Pls.' Compl. [Doc. No. 1-2] 2-3; <u>see also</u> Verified Am. Compl. for Custody, Care and Supervision, Ex. 39 to Pls.' Compl. [Doc. No. 1-6] ¶¶ 9a-9c.)

Upon learning of the plans to remove D.L. from Plaintiffs' home, the DYFS employees assigned to S.K.'s case determined that S.K. "was now at imminent risk of harm" as a result of DYFS removing D.L. from Plaintiffs' care and placing D.L. with a new foster family since Plaintiffs were trying to adopt D.L.  (DYFS Contact Sheet, Ex. 4 to Pls.' Compl. [Doc. No. 1-2] 3.)  Specifically, DYFS employees were concerned that Plaintiffs would "act out in anger toward" S.K. because D.L. was removed from the

home.[2]  (Id.; see also Screening Summary dated November 7, 2008,
Ex. 6 to Pls.' Compl. [1-2] 1.)   However, even prior to November
7, 2008, DYFS was preparing to obtain custody, care, and
supervision of S.K. because there "were serious concerns about
[S.K.] being neglected and emotionally abused in [Plaintiffs']
home."  (DYFS Contact Sheet, Ex. 4 to Pls.' Compl. [Doc. No. 1-2]
3; see also Investigation Summary, Ex. 14 to Pls.' Compl. [Doc.
No. 1-3] 12) ("Neglect substantiated according to Allegations
Based System for Lock-out as the parent or caregiver denied the
child access to the home and refused or failed to make provisions
for another arrangement for the child. [Plaintiff] Keefer and
[Plaintiff] Melleady both stated that they intentionally locked
[S.K.] out of their home for at least a half an hour. [S.K.] did
not have access to the home and had to climb in the basement
window.")

     Accordingly, on November 7, 2008, Plaintiffs signed the
necessary paperwork, and S.K. was removed[3] from Plaintiffs' home

---

2. Furthermore, the record reflects that Plaintiff Keefer was
previously informed that if she or Defendant Melleady were "ever
substantiated for a child abuse or neglect incident in which an
out of home placement of [S.K.] was required, the resource unit
may close her foster home ... [which meant] baby D.L. would be
placed in a different foster home."  (DYFS Contact Sheet, Ex. 13
to Pls.' Compl. [Doc. No. 1-3] 3.)

3. It appears that Plaintiffs' foster child, D.L., was removed
earlier on the evening of November 7, 2008, prior to the time
S.K. was removed.  (Verified Am. Compl. for Custody, Care and
Supervision, Ex. 39 to Pls.' Compl. [Doc. No. 1-6] ¶¶ 9a, 9c.)

on an emergent basis.  (Notice of Emergency Removal, Ex. 22 to
Pls.' Compl. [Doc. No. 1-4] 1-2.)  A hearing was then held on
November 12, 2008 in the Family Court, and DYFS was granted
custody, care, and supervision of S.K.  (DYFS Contact Sheet, Ex.
4 to Pls.' Compl. [Doc. No. 1-2] 3.)  Following subsequent
proceedings, the Family Court entered a Permanency Order on
August 18, 2010 in which the Family Court found that "[i]t is not
and will not be safe to return the child(ren) home in the
foreseeable future because defendants refuse psychological
evaluation and child is 1[7] and refuses counseling and refuses
to return home."  (August 18, 2010 Permanency Order, Ex. 41 to
Pls.' Compl. [Doc. No. 1-6] ¶ I(b).)  The Family Court further
determined that "[t]he minor [S.K.] is unable to thrive in a
family setting and will do well in an independent living program
because: defendants refuse psychological evaluation and child is
17 and refuses counseling and refuses to return home."  (Id. ¶
IV(b).)

**B. Defendants in this Action**

In the complaint, Plaintiffs named the following thirty-
three Defendants: (1) Allison Blake, Commissioner of the
Department of Children and Families; (2) Kathryn Way, DYFS Area
Director; (3) Deborah Watt,[4] DYFS Regional Director; (4) Deborah
Parker, DYFS Manager; (5) Crystal Bates, DYFS Caseworker; (6)

---

4. No appearance has been entered on behalf of this Defendant.

Tiffany Jubb, DYFS Caseworker; (7) Gina Tracy, DYFS Caseworker Supervisor; (8) Janet Foley, DYFS Supervisor; (9) Taiwo Williams, DYFS Caseworker; (10) Jan Fisher,[5] DYFS Supervisor; (11) Terry McNellis, Litigation Specialist; (12) Deserre Whiteside,[6] Resource Specialist; (13) Regina Floyd-Jones, DYFS Supervisor; (15) Janet Boyle, Resource Specialist; (15) Brian Jakubowski, DYFS Caseworker; (16) Larry Moon, DYFS Supervisor; (17) Marcella Haddon, DYFS Supervisor; (18) Gregory Rappaport, DYFS Supervisor; (19) San Payne, DYFS Manager; (20) Frank Borelli, Superintendent of the Delsea Regional School District; (21) Joseph Sottosanti of the Delsea Regional High School; (22) Helen Divens, Vice Principal at Delsea Regional High School; (23) Delsea Regional High School; (24) Christine Norbut-Moses,[7] Assistant Commissioner of the Department of Children and Families; (25) Judge Mary K. White, J.S.C.; (26) Jaime Millard-Tindall,[8] Deputy Attorney General; (27) Brent Brendle,[9] therapist with Family Services of

---

5. No appearance has been entered on behalf of this Defendant

6. Plaintiffs originally improperly identified this Defendant as "Desiree Whitehall." (Pls.' Compl. 3.)

7. Plaintiffs originally improperly identified this Defendant as "Christine Moses." (Pls.' Compl. 4.)

8. Plaintiffs originally improperly identified this Defendant as "Jaime Millard-Tindell." (Pls.' Compl. 4.)

9. Plaintiffs originally improperly identified this Defendant as "Brent Brindle." (Pls.' Compl. 4.)

Burlington, Inc.; (28) Debra Bowen;[10] (29) Noeline Lewis;[11] (30)
Joseph Lewis;[12] (31) David Garnes, Esquire, Law Guardian to S.K.;
(32) Anne Milgram, former Attorney General; and (33) Peter
Fiorentino,[13] Esquire, Plaintiffs' attorney.  (Pls.' Compl. 1-5.)

**C. Allegations in Plaintiffs' Complaint**

As a result of the removal of S.K. and D.L. and the related
Family Court proceedings, Plaintiffs brought this action under 42
U.S.C. § 1983 alleging violations of Plaintiffs' constitutional
rights under the First, Fourth, and Fourteenth Amendments, as
well as a number of state law claims, including defamation,
libel, slander, abuse of process, and negligent and intentional
infliction of emotional distress.  (Pls.' Compl. ¶¶ 14, 22, 28,
39-41, 43, 50-51, 62, 64, 86, 91.)

Initially, the Court notes that Plaintiffs' complaint is

_____

10. No appearance has been entered on behalf of this Defendant.
It is unclear if this Defendant was served with Plaintiffs'
complaint.  This Defendant has not moved to dismiss Plaintiffs'
complaint.

11. No appearance has been entered on behalf of this Defendant.
It is unclear if this Defendant was served with Plaintiffs'
complaint.  This Defendant has not moved to dismiss Plaintiffs'
complaint.

12. No appearance has been entered on behalf of this Defendant.
It is unclear if this Defendant was served with Plaintiffs'
complaint.  This Defendant has not moved to dismiss Plaintiffs'
complaint.

13. No appearance has been entered on behalf of this Defendant.
It is unclear if this Defendant was served with Plaintiffs'
complaint.  This Defendant has not moved to dismiss Plaintiffs'
complaint.

nearly one hundred (100) pages in length and contains approximately one hundred-twenty seven (127) numbered paragraphs.[14]  Moreover, Plaintiffs set forth in the body of their complaint the complete text of the following documents: (1) a three page singled-spaced letter addressed to Judge White and sent to the Advisory Committee on Judicial Conduct outlining Plaintiffs' complaints against Judge White, (see id. ¶ 93); (2) a nearly four page single-spaced letter to a Patrolman Jones[15] describing Plaintiffs' involvement with DYFS and the underlying Family Court action and requesting criminal charges be brought against several individuals named as Defendants in this suit, (see id. ¶ 95); (3) an eight page single-spaced motion that was originally filed in the state court action, (see id. ¶ 101); (4) another nearly five page single-spaced letter to the Advisory Committee on Judicial Conduct outlining complaints against Judge White and DAG Jamie Millard-Tindall, and issues Plaintiffs had with the underlying Family Court action, (see id. ¶ 102); and (5) the Verified Complaint for Custody, Care, and Supervision, filed

---

14. The Court notes that several of Plaintiffs paragraphs are misnumbered, as some numbers are used multiple times to identify different paragraphs.  For example, on page 17 of Plaintiffs' complaint, there are two paragraphs numbered as paragraph 39. However, in citing to Plaintiffs' complaint in this opinion, the Court has not renumbered the paragraphs and cites to these paragraphs as referenced by Plaintiffs.

15. The identity of Patrolman Jones is not clear from the face of the complaint, but the Court notes that this individual was not named as a defendant in this action.

by DYFS in the Family Court action, (see id. ¶ 120).

Plaintiffs allegedly bring the present suit to exercise their right as American citizens "to sue all who [are] responsible for such significant damages resulting in the permanent removal of [their] child(ren) unconstitutionally." (Id. ¶ 86.)  Generally, Plaintiffs allege that their adopted son, S.K., "the boy who cried wolf[,]" made false allegations of child abuse and neglect against them, which prompted an investigation by DYFS.  (Id. ¶¶ 16, 19, 23, 67.)  Plaintiffs assert that the "so-called investigation" by DYFS "was botched, and run amuck[.]" (Id. ¶ 23.)  Plaintiffs allege that the investigation was conducted by "unsupervised ... bias State Workers" and ultimately led to "trumped-up charges" being brought against Plaintiffs which ruined their reputations and resulted in the "kidnapping [sic] [of] their entire family."  (Id.)

Plaintiffs assert that they suffered multiple violations as a result, including: violation of "a family's constitutional right of privacy while residing in their home[;]" discriminative action with regard to their children;  false accusations made without probable cause; intentional withholding of evidence; illegal removal of the children; failure to use reasonable efforts to reunite the family; false imprisonment of their children; continued detention of the children without due process; unreasonable seizure of the children under the Fourth

11

Amendment; and unwarranted removal of the children where no imminent or exigent circumstances existed.  (Id. ¶¶ 26, 62.)

Throughout the complaint, Plaintiffs set forth essentially a laundry list of alleged improprieties and issues which relate to the underlying DYFS investigation and the Family Court proceedings.  (See, e.g., id. ¶¶ 107, 109) (detailing multiple problems Plaintiffs allege related to the DYFS investigation, the "pre-trial" hearing, the "trial", and "post-trial" events).  More specifically, Plaintiffs allege that Defendants at DYFS failed to follow appropriate protocols and procedures by not returning S.K. and D.L. to Plaintiffs' home.  (Id. ¶¶ 26-27.)  Plaintiffs contend that Defendants at DYFS also failed to make reasonable efforts to investigate the allegations against them prior to removing the children from Plaintiffs' home, thus making the removal "criminal and unconstitutional[.]"  (Id. ¶¶ 30-31.) According to Plaintiffs, Defendant Judge White "turned [the Family Court] case into chaos[,]" "went beyond her authority to protect DYFS, and acted as [DYFS's] advocate[,]" and violated Plaintiffs' constitutional rights by allowing other Defendants to engage in "wrongdoing and misconduct[.]"  (Id. ¶¶ 32-33.)

Plaintiffs further assert that Defendants at DYFS acted with reckless disregard by failing to properly analyze and collect data that would have demonstrated that no abuse or neglect occurred and would have lead to the return of the children to

12

Plaintiffs' home and the reunification of the family.  (Id. ¶¶
40-41, 47, 60.)  Plaintiffs represent that they "were cleared by
the State of New Jersey" of any allegations of abuse or neglect
and contend that this fact substantiates their claim that the
children were "apprehended ILLEGALLY."  (Id. ¶¶ 69-70.)
According to Plaintiffs, the Family Court "made an error" and
engaged in "illegal maneuvers" which denied Plaintiffs' their
rights and essentially "black listed" Plaintiffs from adopting
other children.  (Id. ¶ 106.)

As a result of the alleged illegal removal of S.K. and D.L
and the failure by DYFS to reunite the family, Plaintiffs now
seek: (1) removal of Judge White as a Judge in the Superior Court
of New Jersey; (2) "Plaintiffs['] right of elocution without
disruption[;]" (3) the return of both S.K. and D.L. to
Plaintiffs;[16] and (4) fourteen (14) million dollars in damages
consisting of one million dollars for each of the children
involved, one million for each Plaintiff, five million for pain
and suffering, and five million in punitive damages.  (Id. at 73-
74.)  Plaintiffs also seek legal fees, court costs, travel
expenses, and costs for time lost from work.  (Id.)

---

16. In opposing one of the pending motions to dismiss, Plaintiffs
represent that they "are no longer seeking the return of DL, as
... he has been adopted and ... it is [not] in the child's best
interest to be taken again from a bonded family."  (Pls.' Opp'n
[Doc. No. 27] 1.)  Plaintiffs further represent that they no
longer seek the return of S.K. because he is now a legal adult.
(Id.)

## III. **PENDING MOTIONS**

In response to Plaintiffs' complaint, Defendants have filed five separate motions to dismiss.  (See generally [Doc. Nos. 11, 12, 15, 26, 32].)  Plaintiffs filed opposition to each of these motions.[17]  (See generally [Doc. Nos. 14, 17, 27, 28, 33].)

### (1) **Motion to Dismiss by S.K.'s Law Guardian**

The first of these motions was filed by Defendant David T. Garnes, Esquire, a "pool attorney with the [New Jersey] Office of the Public Defender," who "represented S.K. during the child abuse and neglect proceedings as S.K.'s Law Guardian."  (Br. in Supp. of Def. David Garnes's Mot. to Dismiss in Lieu of Answer [Doc. No. 11-3] (hereinafter, "Law Guardian's Mot."), 4.)  Defendant Garnes,("Law Guardian Defendant"), moves to dismiss Plaintiffs' complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiffs fail to state a claim upon which relief can be granted because the Law Guardian Defendant did not act under color of state law.  (Id. at 6-10.)

---

17. The Court has reviewed the oppositions Plaintiffs submitted to the current motions to dismiss.  However, the Court does not reproduce in this opinion the content of these submissions.  As a general matter, the opposition papers consist of multiple paragraphs which are irrelevant to the Court's determination of the motions to dismiss, and to the extent Plaintiffs raise any substantive arguments in opposition, these arguments have been fully considered.  The Court notes that Plaintiffs' opposition papers set forth more detailed allegations of how various Defendants violated their Constitutional rights than are set forth in the complaint.  However, these more detailed allegations are still insufficient to defeat Defendants' legal arguments for dismissal.

The Law Guardian Defendant further argues that he is entitled to absolute immunity from Plaintiffs' suit, or alternatively, is entitled to qualified immunity.  (Id. 10-16.)

**(2) Motion to Dismiss by School Defendants**

The second of these motions was filed by Defendants Delsea Regional School District, Frank D. Borelli, Helen Divens, and Joseph Sottosanti, ("School Defendants"), and also moves to dismiss Plaintiffs' complaint with prejudice pursuant to Federal Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  (Delsea Regional High School Defendants' Br. in Supp. of Mot. to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) [Doc. No. 12-1], (hereinafter, "School Defs.' Mot."), 1-6.)  The School Defendants argue that Plaintiffs' complaint against them should be dismissed because under New Jersey law, the School Defendants were required to report allegations of child abuse to DYFS and thus are entitled to statutory immunity from any civil or criminal liability for making a report to DYFS or testifying before the Family Court. (Id. at 4-5.)  Alternatively, the School Defendants move pursuant to Federal Rule 12(e) for an order requiring Plaintiffs to make a more definite statement of their claims against the School Defendants.  (Id. at 5.)

**(3) Motion to Dismiss by State Defendants**

The third motion to dismiss Plaintiffs' complaint with

prejudice pursuant to Federal Rule 12(b)(6) was filed by
Defendants Allison Blake, Commissioner of the Department of
Children and Families; Christine Norbut-Moses, Assistant
Commissioner of the Department of Children and Families; Kathryn
Way, DYFS Area Director; Anne Milgram, former Attorney General;
Jaime Millard-Tindall, Deputy Attorney General; Gregory
Rappaport, DYFS Supervisor; Larry Moon, DYFS Supervisor; Marcella
Haddon, DYFS Supervisor; Brian Jakubowski, DYFS Caseworker;
Taiwo Williams, DYFS Caseworker; Tiffany Jubb, DYFS Caseworker;
Regina Floyd-Jones, DYFS Supervisor; Terry McNellis, Litigation
Specialist; Deserre Whiteside, Resource Specialist; Gina Tracy,
DYFS Caseworker Supervisor; Janet Boyle, Resource Specialist;
Deborah Parker, DYFS Manager; Crystal Bates, DYFS Caseworker;
Janet Foley, DYFS Supervisor; and San Payne, DYFS Manager,
(hereinafter, "State Defendants").  (See generally Not. of Mot.
to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)
[Doc. No. 15] 1-2.)

The State Defendants seek to dismiss Plaintiffs' complaint
on several grounds.  Initially, the State Defendants argue that
Plaintiffs' claims against them should be dismissed because these
claims are barred by the Rooker-Feldman doctrine, and thus this
Court lacks jurisdiction because Plaintiffs' claims are
"inextricably intertwined" to the adjudication by the Family
Court.  (Br. by State Defs. in Supp. of Their Mot. to Dismiss in

Lieu of Answer Pursuant to Federal Rule of Civil Procedure 12(b)(6) [Doc. No. 15-1], (hereinafter, "State Defs.' Mot."), 5-7.)  The State Defendants further argue that Plaintiffs' claims against Defendants Blake, Norbut-Moses, and Milgram should be dismissed because, under the Eleventh Amendment, these Defendants acting in their official capacities are immune from suit and cannot be considered "persons" for purposes of liability under Section 1983.  (Id. at 7-8, 10.)  To the extent these Defendants are being sued in their individual capacities, the State Defendants argue that the complaint contains "no facts [which] support their personal involvement in the events alleged."  (Id. at 9.)

The State Defendants also argue that they are entitled to absolute immunity and quasi-judicial immunity because Plaintiffs' "allegations challenge Defendants' action in the course of prosecuting the underlying Family Part case," and thus Plaintiffs' claims should be dismissed.  (Id. at 11-13.) Finally, the State Defendants contend that to the extent they are not otherwise entitled to quasi-judicial immunity, the State Defendants are entitled to qualified immunity because Plaintiffs' complaint is "insufficient to show either a depravation of a constitutionally protected right, or that such a right was clearly established at the time of the depravation[.]" (Id. at 13-14.)

### (4) Motion to Dismiss by Counselor Defendant

Defendant Brent Brendle, a counselor who provided services to S.K. and Plaintiffs through Family Services of Burlington County, Inc., also moves to dismiss Plaintiffs' complaint, or alternatively, for summary judgment.  (Def. Brendle's Letter Br. in Supp. of his Mot. to Dismiss and/or for Summ. J. [Doc. No. 26-1] (hereinafter, "Counselor Def.'s Mot."), 1.)  The Counselor Defendant argues that he is entitled to immunity under the litigation privilege for his testimony in the underlying action in the Family Court.  (Id. at 2-3.)  Moreover, the Counselor Defendant contends that he is entitled to immunity under New Jersey law for complying with statutory requirements to report possible child abuse to DYFS and for testifying regarding that report in the Family Court proceeding.  (Id. at 2-3.)  Finally, the Counselor Defendant argues that he cannot be held liable under Section 1983 because he did not act under color of state law either as an employee of Family Services of Burlington County, a private non-profit agency in New Jersey, or as a witness in the underlying Family Court proceedings.  (Id. at 3.)

### (5) Motion to Dismiss by Defendant Judge White

The fifth motion to dismiss pending before the Court was filed by Defendant Judge Mary K. White, J.S.C., ("Judge White"). Judge White moves to dismiss Plaintiffs' complaint with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(1) and

12(b)(6).  (Br. on Behalf of Judge Mary K. White in Supp. of Her Mot. to Dismiss Compl. Pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6) [Doc. No. 32-2] (hereinafter, "Judge White's Mot."), 1.)  Initially, Judge White argues that to the extent Plaintiffs bring claims against Judge White in her official capacity, these claims are barred by the Eleventh Amendment, and thus the Court lacks subject matter jurisdiction and must dismiss the complaint pursuant to Rule 12(b)(1).  (Id. at 7, 17-18.)  Judge White also argues that Plaintiffs' complaint should be dismissed under Rule 12(b)(6) for failure to state a claim because, Judge White, when sued in her official capacity, is not a "person" subject to liability under Section 1983.  (Id. at 9, 19, 22.)

Further, Judge White contends that even to the extent this Court has jurisdiction over Plaintiffs' claims, the complaint should still be dismissed because Judge White is entitled to absolute judicial immunity, regardless of whether Plaintiffs seek to impose liability against her in her individual or official capacity, because Plaintiffs' allegations arise from rulings Judge White made in the child abuse and neglect proceedings in Family Court.  (Id. at 22, 24, 26-27.)  Additionally, Judge White argues that Plaintiffs fail to state a claim for conspiracy under 42 U.S.C. § 1985, that Plaintiffs claims are barred by the Rooker-Feldman abstention doctrine, and that Plaintiffs are

19

collaterally estopped from relitigating issues previously
determined by Judge White.  (Id. at 28-35.)  Finally, Judge White
contends that any claims by Plaintiffs for violations of state
common law are barred because Plaintiffs did not demonstrate in
the complaint that they filed the requisite notice of claim under
the New Jersey Tort Claims Act and because the Tort Claims Act
immunizes actions of judicial officers from suit.[18] (Id. at 36-
39.)

**(6) Motion for Review of DYFS Policies and Procedures**

Plaintiffs have also filed a motion seeking to "change
current bad DYFS policies, procedures, and practices."  (Pls.'
Motion [Doc. No. 18] 1.)  Specifically, Plaintiffs assert that
DYFS employees "are not properly trained in recognizing and
investigating" cases of Reactive Attachment Disorder which leads
to the unnecessary removal of children.  (Id.)  Plaintiffs also
allege that they were not notified of meetings and conversations
which occurred between DYFS employees and school officials, nor
were they informed of reports made against them to the Child
Abuse Hotline, prior to the time S.K. and D.L. were removed from
their home.  (Id.)  Additionally, Plaintiffs object to the use of
statements by DYFS where there is no affidavit attesting to which

18. Judge White also argues that to the extent Plaintiffs raise
claims under the New Jersey Civil Rights Act, those claims must
also be dismissed because Judge White, in her official capacity,
is not a person subject to suit under that Act.  (Id. at 39-40.)

individual supported the statements made in the Verified
Complaint for removal.  (Id.)  Plaintiffs do not request any
specific relief regarding these issues except to note that
Plaintiffs "cannot change what was done to [them], but
[Plaintiffs] can change what is done for others."  (Id.)  The
State Defendants oppose this motion by Plaintiffs.  (See
generally Response in Opp'n [Doc. No. 24].)

IV.  **DISCUSSION**

    **A. Standard for 12(b)(1) Motion to Dismiss**

    A motion to dismiss pursuant to Federal Rule of Civil
Procedure 12(b)(1) challenges the existence of a federal court's
subject matter jurisdiction.  "When subject matter jurisdiction
is challenged under Rule 12(b)(1), the plaintiff must bear the
burden of persuasion."  Symczyk v. Genesis HealthCare Corp., 656
F.3d 189, 191 n.4 (3d Cir. 2011) (citing Kehr Packages, Inc. v.
Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).  In
considering a Rule 12(b)(1) motion, "the district court may not
presume the truthfulness of plaintiff's allegations, but rather
must 'evaluat[e] for itself the merits of [the] jurisdictional
claims.'"  Hedges v. United States, 404 F.3d 744, 750 (3d Cir.
2005) (citing Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d
884, 891 (3d Cir. 1977)).

    **B.   Standard for Rule 12(b)(6) Motion to Dismiss**

    In this case, several Defendants seek dismissal of

Plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims[.]'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions[.]'") (citation omitted).  First, under the Twombly/Iqbal standard, a district court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Iqbal, 129 S. Ct. at 1949).

Second, a district court "must then determine whether the facts alleged in the complaint are sufficient to show that the

plaintiff has a 'plausible claim for relief.'"  Fowler, 578 F.3d at 211 (citing Iqbal, 129 S. Ct. at 1950).  "[A] complaint must do more than allege the plaintiff's entitlement to relief." Fowler, 578 F.3d at 211; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) ("The Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element.  This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element.") (citing Twombly, 550 U.S. at 556).  "The defendant bears the burden of showing that no claim has been presented."  Hedges, 404 F.3d at 750.

However, "if a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." Phillips, 515 F.3d at 245; see also Ray v. First Nat'l Bank of Omaha, 413 F. App'x 427, 430 (3d Cir. 2011) ("A district court should not dismiss a pro se complaint without allowing the plaintiff an opportunity to amend his complaint unless an amendment would be inequitable or futile."); Burrell v. DFS Servs., LLC, 753 F. Supp. 2d 438, 444 (D.N.J. 2010) ("When a claim is dismissed pursuant to Federal Rule of Civil Procedure

12(b)(6), leave to amend and reassert that claim is ordinarily granted. ... A claim may be dismissed with prejudice, however, if amending the complaint would be futile.") (citation omitted). Furthermore, in ruling on the present motion, the Court "must construe [Plaintiffs'] complaint liberally because [they are] proceeding pro se." Huertas v. Galaxy Asset Mgmt., 641 F.3d 28, 32 (3d Cir. 2011) (citing Erickson v. Pardus, 551 U.S. 89, 94 (2007)).

## V.   ANALYSIS
### A.   Requirements Under Rule 8(a)

Initially, the Court finds that Plaintiffs' complaint is in violation of Federal Rule of Civil Procedure 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief[,]" as well as a "short and plain statement of the grounds for the Court's jurisdiction. FED. R. CIV. P. 8(a)(1)-(2). For example, Plaintiffs' jurisdictional statement alone consists of fourteen (14) paragraphs which represents nearly four (4) pages of the complaint. (See Pls.' Compl. ¶¶ 1-14.) However, only the last of these paragraphs formally asserts that Plaintiffs' claims are brought pursuant to Section 1983, thus purporting to raise a federal question in this action. (Id. ¶ 14.)

Moreover, Plaintiffs' complaint, even when construed liberally, clearly fails to set forth a short and plain statement of Plaintiffs' claims. As noted supra, the complaint is nearly

24

one hundred (100) pages in length, contains approximately one
hundred twenty-seven (127) numbered paragraphs, and includes the
full text of five separate documents.  Also, Plaintiffs attached
approximately three hundred thirty-three (333) pages worth of
exhibits.  (<u>See</u> Exs. 1-41 to Pls.' Compl. [Doc. Nos. 1-1, 1-2, 1-
3, 1-4, 1-5, 1-6].)  Furthermore, a thorough review of the
complaint demonstrates that the majority of the paragraphs
present rambling statements[19] and assert multiple allegations
against unspecified Defendants which generally profess that
Plaintiffs are loving parents who provided a good home, are
"innocent" of any child abuse or neglect, were falsely accused of
such acts, and that all Defendants conspired against them in
removing S.K. and D.L. from their home, and failing to reunite
the family.  (<u>See, e.g.</u>, Pls. Compl. ¶¶ 17, 18, 23, 26, 32, 36,
37, 38, 39, 42, 68, 71, 77, 84, 107, 109.)

It is clear from the complaint that Plaintiffs named nearly
every person even remotely connected with the DYFS investigation
and the New Jersey Family Court proceedings as Defendants in this
action.  However, Plaintiffs fail to make any specific

---

19. For example, while Plaintiffs contend that S.K. is like the
"boy who cried wolf" because he purportedly made false
allegations against them, Plaintiffs' complaint sets forth the
entire text of Aesop's fable, despite the fact that the fable
itself is irrelevant to Plaintiffs constitutional claims.  (<u>See</u>
Pls.' Compl. ¶ 24.)

allegations against the majority of these Defendants.[20]
Moreover, while Plaintiffs repeatedly assert that Defendants
acted in bad faith, were in "cahoots" with one another, were
biased, made false allegations against Plaintiffs, engaged in
continued misconduct, altered documents, intentionally withheld
and concealed evidence, conspired and acted in collusion to keep
the children from Plaintiffs, obstructed justice, acted outside
"the scope of their aptitude/training and job duties[,]"
testified falsely in the Family Court proceedings, and Plaintiffs
offer absolutely no factual support for these generalized legal
conclusions.  (See, e.g., Pls. Compl. ¶¶ 17, 18, 23, 26, 32, 36,
37, 38, 39, 42, 68, 71, 77, 84, 107, 109.)  Accordingly,
Plaintiffs' complaint fails to comply with the requirements of
Rule 8(a).[21]  Cf. Venezia v. Union Cnty. Prosecutor's Office, No.
10-6692, 2011 WL 2148818, at *1 (D.N.J. May 31, 2011) (dismissing
pro se plaintiff's amended complaint without prejudice for
failure to comply with Rules 8(a), 8(d), and 10(b) because the
allegations of the complaint were not short, plain, concise, and
direct since: (1) most of the paragraphs of the amended complaint

_____

20. However, Plaintiffs' opposition papers [Doc. Nos. 14, 17, 27,
28, 33] set forth more detailed allegations against specific
Defendants and delineate more clearly the manner in which
Plaintiffs contend Defendants violated their Constitutional
rights.

21. Despite Plaintiffs' failure to comply with Rule 8, the Court
does not dismiss their claims on that basis.

26

were misnumbered, contained multiple allegations, and
unnecessarily underlined or italicized phrases; and (2) the
amended complaint "present[ed] a dense rambling thicket of
statements over the course of fifty-five pages, as well as 200
pages of exhibits[.]")

  B.  **Rooker-Feldman** Doctrine

     The State Defendants and Judge White contend that
Plaintiffs' complaint challenges DYFS's removal of S.K. and D.L.
from Plaintiffs' home and the underlying adjudication of claims
for child abuse and neglect in the New Jersey Family Court.
(State Defs.' Mot. 7; Judge White's Mot. 34.)  Thus, the State
Defendants and Judge White argue that the Court lacks
jurisdiction over Plaintiffs' constitutional claims filed in this
action based on the Rooker-Feldman doctrine.  (State Defs.' Mot.
6-7; Judge White's Mot. 34.)

     "The Rooker-Feldman doctrine bars lower federal courts from
exercising jurisdiction over a case that is the functional
equivalent of an appeal from a state court judgment." Marran v.
Marran, 376 F.3d 143, 149 (3d Cir. 2004).  As the Supreme Court
has held, the Rooker-Feldman doctrine "is confined to cases of
the kind from which the doctrine acquired its name: cases brought
by state-court losers complaining of injuries caused by
state-court judgments rendered before the district court
proceedings commenced and inviting district court review and

rejection of those judgments."[22]   Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).  Specifically, the "Rooker-Feldman doctrine provides that federal district courts lack subject matter jurisdiction to review final adjudications of a state's highest court or to evaluate constitutional claims that are inextricably intertwined with the state court's [decision] in a judicial proceeding."  FOCUS v. Allegheny Cnty. Ct. of Common Pleas, 75 F.3d 834, 840 (3d Cir. 1996) (internal quotations and citations omitted).

As recognized by the Third Circuit, a "case is the functional equivalent of an appeal from a state court judgment in two instances: (1) when the claim was actually litigated before the state court; or (2) when the claim is inextricably intertwined with the state adjudication."  Marran, 376 F.3d at 149.  "A claim is inextricably intertwined with the state court adjudication when 'federal relief can only be predicated upon a conviction that the state court was wrong.'"  Id. at 150 (citing Parkview Assoc. v. City of Lebanon, 225 F.3d 321, 325 (3d Cir.

_____

22. In Exxon Mobil, the Supreme Court explained that the plaintiffs in both the Rooker and Feldman cases alleged federal-question jurisdiction and called upon the district court to overturn an injurious state-court judgment.  544 U.S. 280, 291-92 (2005) (citing Rooker v. Fid. Trust Co., 263 U.S. 413, 416 (1923); District of Columbia Ct. of Appeals v. Feldman, 460 U.S. 462, 476 (1983)).  However, the Supreme Court went on to note that because Section 1257 vests authority to review a state court's judgment solely in the Supreme Court, the district courts in Rooker and Feldman lacked subject-matter jurisdiction.  Exxon Mobil, 544 U.S. at 292.

2000)); see also FOCUS, 75 F.3d at 840 ("A claim is inextricably intertwined if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it.  In other words, Rooker-Feldman precludes a federal action if the relief requested in the federal action would effectively reverse the state decision or void its ruling.  Accordingly, to determine whether Rooker-Feldman bars [plaintiff's] federal suit requires determining exactly what the state court held[.]") (citing Charchenko v. City of Stillwater, 47 F.3d 981, 983 (8th Cir. 1995)).

The Third Circuit has consistently affirmed district court determinations that the Rooker-Feldman doctrine prohibits suits brought in federal court pursuant to Section 1983 where plaintiffs challenge the decisions, orders, or judgments of state family courts.  See, e.g., Gass v. DYFS Workers, 371 F. App'x 315, 315-16 (3d Cir. 2010) (affirming district court dismissal under Rooker-Feldman of Section 1983 claims asserted against state court judge, DYFS, DYFS officials, deputy attorneys general, and public defender attorney in underlying termination of parental rights action to the extent plaintiff challenged family court orders regarding custody of two minors); Johnson v. City of New York, 347 F. App'x 850, 851-52 (3d Cir. 2009) (affirming district court determination that Section 1983 claims were prohibited by Rooker-Feldman to the extent plaintiff sought

29

review of family court decisions regarding emergency removal of children from his home); McKnight v. Baker, 244 F. App'x 442, 444-45 (3d Cir. 2007) (affirming district court finding that the court lacked jurisdiction under Rooker-Feldman to review Section 1983 claims where crux of plaintiff's complaint was that defendants conspired to have the family court suspend his visitation rights with his daughter);[23] McAllister v. Allegheny Cnty. Family Div., 128 F. App'x 901, 902 (3d Cir. 2005) (affirming district court dismissal of federal constitutional claims where plaintiff "plainly [sought] to void or overturn adverse rulings entered in the child-custody litigation" by state family court because such relief required "a finding that the state court ... made incorrect factual or legal determinations").

Similarly, courts within this District have repeatedly recognized that they lack subject matter jurisdiction to entertain Section 1983 claims which challenge adjudications made by state family courts. See, e.g., Severino v. Div. of Youth & Family Servs., No. 11-3767, 2011 WL 5526116, *1 (D.N.J. Nov. 14, 2011) (dismissing sua sponte pro se plaintiff's Section 1983

_____

23. The Third Circuit further noted that based on the nature of plaintiff's claims, it was "hard to imagine a case which more directly asks a district court to review the actions of a state court" because plaintiff could only prevail if the district court concluded that the family court erred in suspending plaintiff's visitation rights or that defendants violated plaintiff's constitutional rights by adhering to the family court orders. McKnight, 244 F. App'x at 444-45.

claims against defendants, including DYFS, DYFS caseworker, New Jersey State Court Judges, and a deputy attorney general, under Rooker-Feldman which challenged a state court proceeding terminating plaintiff's parental rights wherein plaintiff was investigated and prosecuted for neglecting his child); Wilson v. Atl. Cnty. DYFS, No. 10-202, 2010 WL 2178926, at *5-6 (D.N.J. May 25, 2010) (dismissing plaintiff's complaint against local DYFS agency and state court judge and finding that Rooker-Feldman barred Section 1983 claims relating to the family court's issuance of a restraining order which effectively barred plaintiff from seeing his son because the claims were "inextricably intertwined" with the restraining order and amounted to a "prohibited appeal" from the family court adjudication); Kwiatkowski v. De Francesco, No. 01-6145, 2006 WL 2347831, *4-5 (D.N.J. Aug. 11, 2006) (concluding that even if Section 1983 and 1988 claims were not barred by the statute of limitations, claims were barred under Rooker-Feldman because the constitutional claims were "a direct result of the actions taken by DYFS and the state courts" and were "so inextricably intertwined with the state court proceedings that federal review [was] precluded as it would be tantamount to appellate review of state court determinations.")

In this instance, Plaintiffs couch their claims as alleged violations of their constitutional rights, but upon examination

31

of the relief Plaintiffs seek, the Court notes that Plaintiffs specifically request the return of S.K. and D.L. to Plaintiffs,[24] four million dollars in damages for Plaintiffs and the children involved, five million dollars in punitive damages, five million dollars for pain and suffering, legal fees they incurred in defending against the action in the Family Court, and the removal of Judge White as a Superior Court Judge.[25] (Pls.' Compl. 73-74.) With regard to the removal and return of the children, the State Defendants accurately point out, "the removal and placement of the children was the subject of the Family Court proceedings[.]" (State Defs.' Mot. 7). Moreover, the Family Court previously determined in the August 18, 2010 Permanency Order that it was not safe for S.K. to return to Plaintiffs' home and that he was "unable to thrive in a family setting and [would] do well in an independent living program" based on his age and Plaintiffs' refusal to undergo psychological evaluations.

---

24. The Court again notes that Plaintiffs apparently no longer seek the return of S.K. or D.L. to their care. (Pls.' Opp'n [Doc. No. 27] 1.) Plaintiffs argue that the Rooker-Feldman doctrine is not relevant here because Plaintiffs "are not asking for a reversal of the judicial decisions made." (Id.) Plaintiffs contend that they are "asking that those responsible be held accountable for their illegal, unethical, and immoral acts that led to the removal of [the] children and the destruction of [their] family. [Plaintiffs] are not asking for a reversal of Judge White's decision [they] are asking the court to rule on the constitutionality of the decisions." (Id.)

25. To the extent Plaintiffs seek monetary damages, those damages appear to be sought as a direct result of the removal and placement of S.K. and D.L.

(August 18, 2010 Permanency Order, Ex. 41 to Pls.' Compl. [Doc. No. 1-6] ¶¶ I(b), IV(b).)

In order for this Court to grant any of the relief Plaintiffs seek, the Court would be required to review the decision of the New Jersey Family Court.  Such a review would necessitate this Court passing judgment on the soundness and validity of the Family Court's actions, reasoning, and resolution of the underlying child abuse and neglect proceedings.  For example, only by drawing its own legal and factual conclusions as to the legitimacy of the Family Court's actions could this Court determine whether the removal and placement of S.K. and D.L. was, as Plaintiffs contend, illegal, unwarranted, unreasonable, and unconstitutional.  Plaintiffs specifically argue that the Family Court "made an error" and engaged in "illegal maneuvers" that denied Plaintiffs' their rights and "black listed" Plaintiffs from adopting other children.  (Pls.' Compl. ¶ 106.)

To determine whether the Family Court "made an error" or engaged in "illegal maneuvers" in granting custody, care, and supervision of S.K. to DYFS, allowing the children to be removed from the home, and determining that S.K. should be placed in an independent living program would clearly require this Court to opine on issues that were previously adjudicated by the Family Court and to conclude that the Family Court's adjudication was erroneous.  Such review is intended for the appellate process.

33

Moreover, although Plaintiffs' complaint names numerous
Defendants including school officials, it is clear that the
essence of Plaintiffs' constitutional claims is the direct result
of the actions taken by DYFS officials and the Family Court.
Thus, the Court finds that Plaintiffs' claims are inextricably
intertwined with the New Jersey Family Court adjudication because
the federal relief sought by Plaintiffs "can only be predicated
upon a conviction that the state court was wrong." See Marran,
376 F.3d at 150.  Accordingly, to the extent any of Plaintiffs'
constitutional claims pursuant to Section 1983 require a review
of the Family Court adjudication, Plaintiffs have failed to meet
their burden to demonstrate that the Court has subject matter
jurisdiction over these claims and the claims are barred under
the Rooker-Feldman doctrine against all Defendants and must be
dismissed with prejudice.  See, e.g., Gass, 371 F. App'x at 315-
16; Wilson, 2010 WL 2178926, at *5-6; Kwiatkowski, 2006 WL
2347831, *4-5.

   **C.   Eleventh Amendment Immunity**

   Judge White and State Defendants Blake, Norbut-Moses, and
Milgram also argue that even if Plaintiffs' claims are not barred
under the Rooker-Feldman doctrine, Plaintiffs' claims must be
dismissed because these Defendants, sued in their official

capacities,[26] are entitled to Eleventh Amendment Immunity.
(Judge White's Mot. 7-8, 11, 17-18; State Defs.' Mot. 7-10.)  The
Court agrees.  Moreover, because Plaintiffs bring their claims
against all of the DYFS Defendants in their official capacities,
those claims must almost be dismissed pursuant to Eleventh
Amendment Immunity.

The Supreme Court has repeatedly made clear for over a
century "that the Constitution does not provide for federal
jurisdiction over suits against nonconsenting States." Kimel v.
Florida Bd. of Regents, 528 U.S. 62, 73 (2000).  Unless sovereign
immunity is waived by the state or by a federal statute, private
parties who seek to impose liability which must be paid from
public funds in the state treasury are barred by the Eleventh
Amendment from bringing suit in federal court. Quren v. Jordan,
440 U.S. 332, 337 (1979).  Importantly, both the Supreme Court
and the Third Circuit have recognized that suits for money
damages against state employees in their official capacities are
also barred by the Eleventh Amendment. See, e.g., Kentucky v.
Graham, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits ...
'generally represent only another way of pleading an action
against an entity of which an officer is an agent.' ... [A]n
official-capacity suit is, in all respects other than name, to be

_____

26. Plaintiffs' complaint indicates that all Defendants are being
sued in both their individual and official capacities.  (Pls.'
Compl. 2.)

treated as a suit against the entity.") (citation omitted); Pa.
Fed'n of Sportsmen's Clubs, Inc. v. Hess, 297 F.3d 310, 323 (3d
Cir. 2002) ("the Eleventh Amendment ... has been interpreted to
render states –- and, by extension, state agencies and
departments and officials when the state is the real party in
interest –- generally immune from suits by private parties in
federal court.").

The Third Circuit and multiple courts in this District have
consistently found that Eleventh Amendment sovereign immunity
bars claims for money damages against DYFS and DYFS employees
sued in their official capacities. See, e.g., Howard v. New
Jersey Div. of Youth & Family Servs., 398 F. App'x 807, 811-12
(3d Cir. 2010) (affirming district court dismissal of claims for
damages and attorneys fees against DYFS and two DYFS officers
sued in their official capacities based on Eleventh Amendment
immunity); Love v. New Jersey Div. of Youth & Family Servs., No.
07-3661, 2010 WL 2950019, at *2 (D.N.J. July 22, 2010) (granting
summary judgment to DYFS and DYFS supervisor and director sued in
their official capacities finding that such claims were barred by
Eleventh Amendment Immunity); Garlic v. New Jersey Div. of Youth
& Family Servs., No. 09-1550, 2009 WL 2634665, at *2 (D.N.J. Aug.
24, 2009) ("plaintiff's claims for money damages against DYFS and
[DYFS caseworker], who has been sued in her official capacity,
are barred by the doctrine of sovereign immunity"); Metz v. New

Jersey Dep't of Human Servs., No. 06-5010, 2007 WL 2416435, at *2 (D.N.J. Aug. 21, 2007) (concluding that where plaintiffs sought money damages which would be paid from public funds, DYFS defendants were entitled to Eleventh Amendment Immunity thus warranting dismissal of plaintiffs' claims).

Accordingly, to the extent any of Plaintiffs' claims are not barred by the Rooker-Feldman doctrine, Plaintiffs' claims against Defendants Blake, Norbut-Moses, and Milgram in their official capacities are barred by Eleventh Amendment Immunity and therefore must be dismissed with prejudice.  Further, Plaintiffs' claims against all Defendants who are DYFS officials or employees sued in their official capacities are similarly precluded by the Eleventh Amendment and are therefore dismissed with prejudice. Moreover, the Court finds that Plaintiffs' claims against Judge White in her official capacity are also barred by Eleventh Amendment Immunity and must be dismissed with prejudice.  See Dongon v. Banar, 363 F. App'x 153, 156 (3d Cir. 2010) (recognizing that "the state courts, its employees, and the judges are entitled to immunity under the Eleventh Amendment because they are part of the judicial branch of the state of New Jersey, and therefore considered 'arms' of the state.") (citing Johnson v. State of New Jersey, 869 F. Supp 289, 296-98 (D.N.J. 1994)); see also Hunter v. Supreme Ct. of New Jersey, 951 F.

Supp. 1161, 1177-78 (D.N.J. 1996).[27]

### D.  Absolute Immunity

The State Defendants, Judge White, and the Law Guardian Defendant also argue that they are entitled to absolute immunity from Plaintiffs' claims brought against them in their individual capacities.  (See State Defs.' Mot. 10-13; Judge White's Mot. 22-27; Law Guardian's Mot. 10-12.)

### (1) Absolute Immunity - Judge White

It is well established that "[a] judicial officer in the performance of his [or her] duties has absolute immunity from suit and will not be liable for his [or her] judicial acts." Azubuko v. Royal, 443 F.3d 302, 303 (3d Cir. 2006) (citing Mireles v. Waco, 502 U.S. 9, 12 (1991)); see also Gallas v. Supreme Ct. of Pennsylvania, 211 F.3d 760, 768 (3d Cir. 2000) ("The Supreme Court long has recognized that judges are immune

---

27. Additionally, the Court also finds that neither the State Defendants nor Judge White, sued in their official capacities, qualify as "persons" under Section 1983, a requirement for establishing liability, and therefore, Plaintiffs' claims must be dismissed with prejudice on that basis as well.  See, e.g., Will v. Michigan Dep't of State Police, 491 U.S. 58, 66, 71 (1989) (recognizing that a state is not a "person" within the meaning of Section 1983, and concluding that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office[,]" and "[a]s such, it is no different from a suit against the State itself"); Metz, 2007 WL 2416435, at *3 (acknowledging that "[a]rms of the state that have traditionally enjoyed sovereign immunity, as well as officials acting in their official capacities, are also not considered 'persons' under § 1983" and dismissing claims against DYFS, as an arm of the state, on the basis it was not a "person" under Section 1983).

from suit under section 1983 for monetary damages arising from their judicial acts.")  Accordingly, "'[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the "clear absence of all jurisdiction."'"  Azubuko, 443 F.3d at 303 (citing Stump v. Sparkman, 435 U.S. 349, 356-57 (1978)).  Judicial immunity serves an important function in that it furthers the public interest in judges who are "at liberty to exercise their functions with independence and without fear of consequences." Pierson v. Ray, 386 U.S. 547, 554 (1967) (internal quotations and citation omitted).

Courts have repeatedly emphasized the extensive scope of judicial immunity, holding that immunity applies "'however injurious in its consequences [the judge's action] may have proved to the plaintiff[.]'"  Gallas, 211 F.3d at 769 (citing Cleavinger v. Saxner, 474 U.S. 193, 199-200 (1985)). "Disagreement with the action taken by the judge ... does not justify depriving that judge of his immunity. ... The fact that the issue before the judge is a controversial one is all the more reason that he should be able to act without fear of suit." Stump, 435 U.S. at 363-64.  Further, highlighting its expansive breadth, it is recognized in this District that "the public policy favoring the judicial immunity doctrine outweighs any

39

consideration given to the fact that a judge's errors caused the deprivation of an individual's basic due process rights afforded to him under the law." Figueroa v. Blackburn, 39 F. Supp. 2d 479, 495 (D.N.J. 1999). Thus, allegations that actions were undertaken with an improper motive diminishes neither their character as judicial actions nor the judge's immunity. See Forrester v. White, 484 U.S. 219, 227 (1988).

There is however, two exceptions to the doctrine of judicial immunity. These exceptions are narrow in scope and are infrequently applied to deny immunity. The first exception is where a judge engages in nonjudicial acts, i.e., actions not taken in the judge's judicial capacity. Gallas, 211 F.3d at 768. The second exception involves actions that, though judicial in nature, are taken in the complete absence of all jurisdiction. Id. Neither exception is applicable in the present case as Plaintiffs' only allegations against Judge White are directly related to her duties as a judge presiding over a child abuse and neglect proceeding properly before her in New Jersey Family Court. Therefore, it is clear in this instance that all of Judge White's actions qualify as judicial acts which were taken in the proper exercise of jurisdiction in the Family Court. Accordingly, to the extent Plaintiffs' claims are not otherwise barred by the Rooker-Feldman doctrine and by Eleventh Amendment Immunity, Plaintiffs' claims against Judge White in her

40

individual capacity must be dismissed with prejudice because
Judge White is entitled to absolute judicial immunity from
Plaintiffs' suit.[28]

### (2) Absolute Immunity - The Law Guardian

Similarly, the Court finds that the Law Guardian Defendant
is also entitled to absolute immunity from Plaintiffs' claims in
this action.  In New Jersey, the "Law Guardian Program [of the
Office of the Public Defender] is charged with the responsibility
of acting as law guardian to children in child abuse or neglect
proceedings."  Delbridge v. Office of Pub. Defender, 569 A.2d
854, 857 (N.J. Super. Ct. Law Div. 1989), aff'd sub nom. A.D. v.
Franco, 687 A.2d 748, 750 (N.J. Super. Ct. App. Div. 1993),
certif. denied, 640 A.2d 849 (N.J. 1994), cert. denied sub nom.
Delbridge v. Franco, 513 U.S. 832 (1994).  In abuse and neglect
proceedings, a law guardian is appointed by the court to act on
behalf of the child pursuant to New Jersey Statue § 9:6-8.43, and
accordingly, a law guardian is "cloaked with the long-standing
immunity afforded judges by state and federal law."  Id. at 860.
Such absolute immunity is necessary because law guardians "in
representing the best interests of the ... children [involved in
abuse and neglect proceedings], [are] acting as an integral part

_____

28. In light of the Court's determinations that Plaintiffs'
claims against Judge White are barred by the Rooker-Feldman
doctrine, Eleventh Amendment Immunity, and absolute immunity, the
Court does not address Judge White's additional argument
regarding collateral estoppel.

of the judicial process, and public policy dictates that they be free to act independently and vigorously without fear of reprisal at the hands of aggrieved parents."[29]  Id. at 861.  Therefore, to the extent Plaintiffs bring claims against the Law Guardian Defendant for his actions in the underlying Family Court proceeding, those claims must be dismissed with prejudice as the Law Guardian Defendant is entitled to absolute immunity because he was acting on behalf of the child, S.K., in the Family Court proceedings before Judge White.[30]

---

29. Although not deciding the precise issue, the Third Circuit has similarly recognized that "a guardian ad litem would be absolutely immune in exercising functions such as testifying in court, prosecuting custody or neglect petitions, and making reports and recommendations to the court in which the guardian acts as an actual functionary or arm of the court, not only in status or denomination but in reality." Gardner by Gardner v. Parson, 874 F.2d 131, 146 (3d Cir. 1989).  Other courts have also found that attorneys acting as guardians ad litem on behalf of children in dependency proceedings for abuse and neglect are entitled to absolute quasi-judicial immunity. See, e.g., Harrison v. Gilbert, 148 F. App'x 718, 719-721 (10th Cir. 2005) (affirming district court order which dismissed claims against guardians ad litem who represented plaintiffs' children in state court dependency proceedings on the basis of quasi-judicial immunity); Goodson v. Maggi, --- F. Supp. 2d ---, No. 08-44, 2011 WL 2533286, at *12 (W.D. Pa. June 23, 2011) (dismissing with prejudice plaintiff's Section 1983 claims concerning defendant's role as a guardian ad litem on behalf of plaintiff's child in termination of parental rights proceeding in state family court because guardian ad litem was protected by absolute immunity).

30. Having determined that the Law Guardian Defendant is entitled to absolute immunity and thus the claims against him must be dismissed, the Court need not address the Law Guardian's arguments that the claims against him should be dismissed on the basis that he was not acting under color of state law for purposes of Section 1983 liability or that he is entitled to qualified immunity.

**(3) Absolute Immunity - State Defendants**

Finally, the State Defendants contend that they are immune from suit based on the doctrine of quasi-judicial immunity.  The Third Circuit has previously held that caseworkers employed by a state child services agency "are entitled to absolute immunity for their actions on behalf of the state in preparing for, initiating, and prosecuting dependency proceedings.  Their immunity is broad enough to include the formulation and presentation of recommendations to the court in the course of such proceedings." Ernst v. Child & Youth Servs. of Chester Cnty., 108 F.3d 486, 495 (3d Cir. 1997).  Moreover, the Third Circuit has further held that attorneys representing a state child services agency such as DYFS are also "entitled to absolute immunity for all of [the attorney's] quasi-prosecutorial activities while representing [the agency] in connection with [a child's] dependency proceedings[.]" Id. at 504; see also Brown v. Daniels, 290 F. App'x 467, 474-75 (3d Cir. 2008) (affirming denial of motion to amend to add as defendants solicitor who acted on behalf of child services agency and guardian ad litem appointed by court to represent child on the basis that these proposed defendants "would have been entitled to absolute immunity for their roles in [the] dependency proceedings" and thus amendment would have been futile) (citing Ernst, 108 F.3d at 495).  New Jersey courts have also recognized that DYFS

43

caseworkers, employees, supervisors, and directors, as well as New Jersey Deputies Attorney General and the Attorney General are entitled to absolute immunity where these individuals are "performing judicial acts within the jurisdiction of the Superior Court, Family Part[.]" Delbridge v. Schaeffer, 569 A.2d 872, 881-82 (N.J. Super. Ct. Law Div. 1989), aff'd sub nom. A.D. v. Franco, 687 A.2d 748, 750 (N.J. Super. Ct. App. Div. 1993), certif. denied, 640 A.2d 849 (N.J. 1994), cert. denied sub nom. Delbridge v. Franco, 513 U.S. 832 (1994).

Based on the foregoing, to the extent Plaintiffs' claims against the State Defendants are not barred under the Rooker-Feldman doctrine or prohibited by Eleventh Amendment Immunity, the Court agrees that the State Defendants are entitled to absolute immunity in this action.  Plaintiffs' complaint sets forth no credible factual allegations against the State Defendants outside of each State Defendant's role (or limited role as the case may be) in preparing for, initiating, and prosecuting the dependency proceedings before Judge White in the Family Court.[31]  Accordingly, the State Defendants[32] are entitled

---

31. Even the more detailed factual allegations set forth in Plaintiffs' opposition papers on the motions to dismiss fail in this regard.

32. Although no appearance has been entered on behalf of either Deborah Watt, a DYFS Regional Director, or Jan Fisher, a DYFS Supervisor, the Court dismisses Plaintiffs' claims against these Defendants with prejudice.  To the extent Plaintiffs' claims against these Defendants are not barred by the Rooker-Feldman

to absolute immunity against Plaintiffs' claims based on those

proceedings.[33]

### E.   Statutory Immunity Under New Jersey Law

Both the School Defendants and the Counselor Defendant argue

that Plaintiffs' claims against them fail because they are

entitled to statutory immunity under New Jersey law.  (School

Defs.' Mot. 4-5; Counsel Def.'s Mot. 2-3.)  Specifically, the

School Defendants and the Counselor Defendant contend that

Plaintiffs' claims against them arise out of reports certain of

these Defendants made to DYFS concerning allegations that S.K.

was being abused or neglected by Plaintiffs and their subsequent

testimony in the Family Court proceedings.  (School Defs.' Mot.

4; Counsel Def.'s Mot. 2-3.)  Based on Plaintiffs' claims, these

Defendants argue that New Jersey Statute § 9:6-8.10 required them

to report allegations of child abuse to DYFS and that Section

9:6-8.13 immunizes them from liability for such mandatory reports

and any related testimony in judicial proceedings.  (School

Defs.' Mot. 4-5; Counsel Def.'s Mot. 2-3.)

Under New Jersey Law, "a duty falls on all citizens to

---

doctrine or Eleventh Amendment Immunity, these Defendants are
DYFS employees, and like the represented State Defendants, they
are entitled to absolute immunity from Plaintiffs' claims.

33. In light of the Court's rulings regarding the Rooker-Feldman
doctrine, Eleventh Amendment Immunity, and absolute immunity, the
Court does not address the State Defendants' argument regarding
qualified immunity and Plaintiffs' failure to plead a deprivation
of a constitutionally protected right.

report possible child abuse." Carter v. Estate of Lewis, No. 08-1301, 2011 WL 1885953, at *2 (D.N.J. May 18, 2011) (citing N.J. Stat. Ann. § 9:6-8.10). New Jersey's mandatory child abuse reporting statute provides:

> Any person having reasonable cause to believe that a child has been subjected to child abuse or acts of child abuse shall report the same immediately to the Division of Youth and Family Services by telephone or otherwise. Such reports, where possible, shall contain the names and addresses of the child and his parent, guardian, or other person having custody and control of the child and, if known, the child's age, the nature and possible extent of the child's injuries, abuse or maltreatment, including any evidence of previous injuries, abuse or maltreatment, and any other information that the person believes may be helpful with respect to the child abuse and the identity of the perpetrator.

N.J. Stat. Ann. § 9:6-8.10 (West 2011). The statute further provides that "[a]nyone acting pursuant to this act in the making of a report ... shall have **immunity from any liability, civil or criminal**, that might otherwise be incurred or imposed. Any such person shall have the **same immunity** with respect to **testimony** given in **any judicial proceeding** resulting from such report." N.J. Stat. Ann. § 9:6-8.13 (West 2011) (emphasis added).

The Appellate Division of the New Jersey Superior Court has noted that this statutory provision does not go so far as to provide reporters of suspected child abuse with absolute immunity from suit. F.A. by P.A. v. W.J.F., 656 A.2d 43, 48 (N.J. Super. Ct. App. Div. 1995). However, the Appellate Division recognized

that the New Jersey "Legislature has clearly expressed its resolve to firmly address this terrible problem by encouraging the reporting of suspected child abuse.  The Legislature ... sought to accomplish this by requiring every person to report suspected child abuse, by providing that failure to report is a disorderly persons offense and by affording immunity from liability for the reporters." Id. at 47.  Moreover, "[t]hat legislative resolve can easily be frustrated if complying with the duty to report can subject the reporter to costly and protracted civil litigation[.]" Id.  Accordingly, the Appellate Division instructed that courts must "liberally construe the statutory grant of immunity[,]" and set forth the following paradigm for examining whether immunity attaches for reporters of child abuse:

> (1) An objective test will be used to determine whether a report of suspected child abuse is made pursuant to the statute.  The test will be whether a reasonable person would have reasonable cause to believe that a child has been abused[;] (2) Immunity will attach if an investigation by DYFS shows that there was a reasonable basis to suspect child abuse and the report was made immediately[;] (3) Immunity will not be withheld merely because the reporter did not act "immediately."  The requirement of reporting "immediately" was intended to protect children from the potentially serious consequences of delay.  We glean no legislative intent that the failure to act immediately will necessarily strip immunity from the reporter[;] (4) A trial court should not hesitate to place appropriate restrictions on discovery.  Trial courts are also encouraged to use summary judgment procedures.  Thus, immunity issues will

> be addressed and determined speedily without
> extensive and burdensome discovery and trial
> preparation.

Id.

The issue of reporter immunity was resolved at the summary judgment stage of the proceedings in F.A. by P.A.. Id. at 48-49. There, the Appellate Division determined that immunity attached based on (1) defendants' deposition testimony regarding observations that the child in question was playing in the street unsupervised and that plaintiff was yelling and screaming at the child; and (2) a DYFS report which contained some indications of child abuse. Id. at 49. The court found that the DYFS report and the defendants' deposition testimony were "more than sufficient for a reasonable person to conclude that defendants had reasonable cause to believe that child abuse had taken place." Id. By contrast, the Court is being asked in this instance to examine whether immunity for the School Defendants and the Counselor Defendant has attached at the motion to dismiss stage. In deciding this issue, the Court notes that Plaintiffs attached to their complaint over three hundred pages worth of exhibits.[34] These exhibits include multiple documents from DYFS

---

34. As these documents are relied upon by Plaintiffs in the complaint and are attached as exhibits directly thereto, the Court may properly consider these documents in the context of a motion to dismiss under Rule 12(b)(6) without converting the motion to one for summary judgment. D.G. v. Somerset Hills School Dist., 559 F. Supp. 2d 484, 491 (D.N.J. 2008) ("[T]he Court may consider (1) exhibits attached to the complaint, (2)

including but not limited to: screening summaries, contact sheets, investigation summaries, and assessment summaries.

As they relate to the issue of reporter immunity, Exhibit 12 is a Screening Summary dated August 15, 2008 which relates to the report made by the Counselor Defendant. (Screening Summary, Ex. 12 to Pls.' Compl. [Doc. No. 1-3] 1-5.) As set forth in the August 15, 2008 Screening Summary, the Counselor Defendant contacted DYFS to report that S.K. was "hiding" at school because, according to S.K., his adoptive father, Plaintiff Melleady, threatened to kill him. (Id. at 1.) The Counselor Defendant further reported to DYFS that S.K. made allegations that his adoptive mother, Plaintiff Keefer, slapped him in the head regarding an incident with a can opener. (Id.) The Screening Summary further indicates that the DYFS screening worker who took the report from the Counselor Defendant reached out to S.K. directly, and that S.K. reported that he was "scared to go home, and said that [his] dad grabbed the collar of his shirt and threatened to kill him." (Id. at 2.) Subsequently, it appears that the screening worker learned that S.K. would be

---

matters of public record, and (3) all documents that are integral to or explicitly relied upon in the complaint without converting the motion to dismiss into one for summary judgment.); see also M & M Stone Co. v. Pennsylvania, 288 F. App'x 156, 162 (3d Cir. 2010) ("In reviewing a Rule 12(b)(6) motion, it is well-established that a court should 'consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.'")

transported from his school to the local police department. (<u>Id.</u>)

To determine whether the Counselor Defendant is entitled to statutory immunity for making this report to DYFS, the Court must determine whether a reasonable person would have had reasonable cause to believe that a child had been abused and whether an investigation by DYFS demonstrated any reasonable basis to suspect child abuse.  <u>F.A. by P.A.</u>, 656 A.2d at 47.  Having reviewed the Screening Summary dated August 15, 2008, it is clear that the Counselor Defendant contacted DYFS to report suspected child abuse based on a direct communication the Counselor Defendant had with S.K. regarding the specific incidents alleged- i.e., that S.K.'s adoptive father threatened to kill him and that his mother had slapped him in the head.  An objective review of the facts demonstrates that a reasonable person who learned directly from the child involved in the incidents that the child's father threatened to kill the child causing the child to hide at school and that his mother slapped him in the head would have reasonable cause to believe that the child had been abused. Thus, the Counselor Defendant, by reporting this information to DYFS, acted as any reasonable person would have in the same circumstances.

Moreover, once this report was made to DYFS by the Counselor Defendant, the DYFS screening worker independently verified the

allegations with S.K.  Accordingly, the Court finds that immunity based on Section 9:6-8.13 attached on behalf of the Counselor Defendant in these circumstances, and that the Counselor Defendant is entitled to statutory immunity not only for his initial report to DYFS but also for his testimony as a witness in the Family Court proceedings.  See N.J. STAT. ANN. 9:6-8.13 (providing the immunity from civil or criminal liability for making a report also applies "with respect to testimony given in any judicial proceeding resulting from such report.")  Therefore, Plaintiffs' claims against the Counselor Defendant are dismissed with prejudice.[35]

With respect to the School Defendants'[36] attempt to assert statutory immunity, a similar Screening Summary dated October 14,

_____

35. In light of the Court's determination that the Counselor Defendant is entitled to statutory immunity from liability for reporting suspected child abuse and testifying in the Family Court proceedings, the Court does not address the Counselor Defendant's additional arguments that he is entitled to absolute immunity as a witness under New Jersey's litigation privilege and that he did not act under color of state law for purposes of Plaintiffs' Section 1983 claim.

36. The Court notes that the only School Defendant against whom any specific factual allegations are made in the complaint is Vice Principal Helen Divens.  Accordingly, although Plaintiffs named Defendants Borelli, Sottosanti, and the Delsea Regional School District in the complaint, Plaintiffs fail to sufficiently state any claims against these Defendants upon which relief can be granted.  To the extent Plaintiffs seek to impose liability on these Defendants based on the actions of Defendant Divens, these claims also fail and are dismissed with prejudice because, as set forth herein, Defendant Divens is entitled to statutory immunity from liability in this case.

2008 is also attached to the complaint as Exhibit 19.  (Screening
Summary, Ex. 19 to Pls.' Compl. [Doc. No. 1-4] 1-5.)  In the
October 14, 2008 Screening Summary, one of the School Defendants,
Vice Principal Helen Divens, contacted DYFS to report that S.K.
had come to school that day claiming that he ran away from home
and had not been home for three days.  (<u>Id.</u> at 1.)  After
informing the DYFS screening worker about the facts Defendant
Divens learned directly from S.K., Defendant Divens then put S.K.
on the telephone call with the DYFS screening worker.  (<u>Id.</u>)
S.K. then verified for the screening worker that he had run away
from home because he did not like how he was being treated by his
mother.  (<u>Id.</u>)  Specifically, S.K. identified that his mother was
very controlling and that she had hit him in the past, kicked him
in the legs and shins, grabbed him by the neck, and punched him
in the head.  (<u>Id.</u>)  After S.K. spoke with the screening worker,
Defendant Divens informed the screening worker that S.K.'s
adoptive father, Plaintiff Melleady, had called the school to see
if S.K. had been located as he had been missing for several days.
(<u>Id.</u>)  The screening worker then noted that the abuse reported by
S.K. was previously reported to DYFS in September of 2008.  (<u>Id.</u>
at 2.)

    As the Court similarly found with respect to the Counselor
Defendant, an objective review of the October 14, 2008 Screening
Summary demonstrates that the School Defendants are also entitled

to statutory immunity for reporting suspected child abuse to DYFS and testifying in the Family Court proceedings.  The October 14, 2008 Screening Summary clearly demonstrates that the School Defendants, specifically Defendant Divens, contacted DYFS to report suspected child abuse based on a information that S.K. had run away from home for several days.  A reasonable person who learned that a child ran away from home and had not been home for several days would have reasonable cause to believe that the child had suffered some form of abuse or neglect which prompted him to run away.  Thus, the School Defendants, and specifically Defendant Divens, by reporting this information to DYFS, acted as any reasonable person would have in the same circumstances.

Moreover, as before, once this report was made to DYFS, the DYFS screening worker spoke with S.K. during the same telephone call and independently verified the allegations with S.K. that he had run away.  The screening worker also learned of additional allegations of abuse which had previously been reported to DYFS. Accordingly, the Court finds that immunity based on Section 9:6-8.13 attached on behalf of the School Defendants in these circumstances, and that the School Defendants are entitled to statutory immunity not only for the report to DYFS but also for the testimony of Defendant Divens in the Family Court proceedings.  See N.J. Stat. Ann. 9:6-8.13.  Accordingly, Plaintiffs' claims against the School Defendants are dismissed

with prejudice.[37]

## F. Additional Issues

In the complaint, Plaintiffs repeatedly allege that Defendants conspired against them to deprive Plaintiffs of their constitutional rights.  However, Plaintiffs do not provide a sufficient factual basis for these claims.  It appears to the Court that these claims are based merely on Plaintiffs' own suspicions and speculations.  Therefore, to the extent Plaintiffs allege a claim for conspiracy to deprive them of their constitutional rights, the Court finds that Plaintiffs fail to state a claim upon which relief can be granted and this claim is dismissed with prejudice.  See, e.g., Gera v. Pennsylvania, 256 F. App'x 563, 565-66 (3d Cir. 2007) (affirming district court dismissal of the plaintiff's claims that attorney general and district attorney conspired against the plaintiff to deprive him of his constitutional rights where it appears the claims were not based in fact but upon the plaintiff's own suspicion and speculation); Severino, 2011 WL 5526116, at *3 ("To the extent that the plaintiff asserts any discernible allegations concerning a conspiracy on the part of the defendants to deprive him of federal rights, such allegations appear to be based on mere

---

37. Having determined that the School Defendants are entitled to statutory immunity and that they claims against them are dismissed, the Court does not address the School Defendants' alternative request to require Plaintiffs to provide a more definite statement under Rule 12(e).

speculation and thus are without merit.") (citing <u>Gera</u>, 256 F. App'x at 565-66.)

In light of the Court's ruling which grants all five pending motions to dismiss Plaintiffs' complaint and dismisses Plaintiffs' underlying federal claims with prejudice, Plaintiffs no longer maintain a cause of action which independently establishes federal subject matter jurisdiction.   Accordingly, pursuant to 28 U.S.C. § 1367(c)(3), the Court, <u>sua</u> <u>sponte</u>, declines to exercise supplemental jurisdiction over any state law claims to the extent they are raised in Plaintiffs' complaint. Under Section 1367(c)(3), "[a] district court may decline to exercise supplemental jurisdiction over a claim if 'the district court has dismissed all claims over which it has original jurisdiction[.]'"   <u>Oras v. City of Jersey City</u>, 328 F. App'x 772, 775 (3d Cir. 2009) (citing 28 U.S.C. § 1367(c)(3)).

Moreover, as recognized by the Third Circuit, "[w]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court _must_ decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so."   <u>Oras</u>, 328 F. App'x at 775 (citing <u>Hedges v. Musco</u>, 204 F.3d 109, 123 (3d Cir. 2000)) (internal quotations omitted) (emphasis in original).   In this case, the Court finds that considerations of judicial economy,

convenience, and fairness do not affirmatively justify the exercise of supplemental jurisdiction.  Having declined to exercise supplemental jurisdiction, the Court dismisses any pending state law claims without prejudice.  Finally, in light of the dismissal of all of Plaintiffs' claims, Plaintiffs' motion [Doc. No. 18] seeking review of DYFS policies and procedures is dismissed as moot.

**VI.   CONCLUSION**

        For the foregoing reasons, Defendants' motions [Doc. Nos. 11, 12, 15, 26, 32] to dismiss are granted.  Plaintiffs' motion [Doc. No. 18] to address DYFS policies and procedures is dismissed as moot.  An Order consistent with this Opinion will be entered.


Dated: December 15, 2011          /s/ Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.